AO 91 (Rev. 11/11)  Criminal Complaint

**SEALED BY ORDER OF THE COURT**

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| Martin Campos, Jr., a/k/a "Silent" | ) Case No. **CR 21-71733-MAG** |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  October 6, 2020  in the county of  Monterey  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm and ammunition |

This criminal complaint is based on these facts:

Please see attached affidavit of ATF Special Agent Oluwatoba O. Awolola

☐ Continued on the attached sheet.

/s/
*Complainant's signature*

Oluwatoba O. Awolola, ATF Special Agent
*Printed name and title*

Approved as to form _____
AUSA Neal C. Hong_____

Sworn to before me by telephone.

Date: 11/01/2021

*Judge's signature*

City and state:  McKinleyville, CA   Robert M. Illman U.S. Magistrate Judge
*Printed name and title*

Print  Save As...  Attach  Reset

# AFFIDAVIT OF OLUWATOBA O. AWOLOLA
# IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Oluwatoba O. Awolola, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of an application for criminal complaints and arrest warrants for Francisco Javier Jaramillo, Martin Campos, Jr., and Cody Moreno.

2. Based on the information below, I believe that Francisco Javier Jaramillo (1) unlawfully possessed a firearm (specifically, a .22 caliber Ruger model Mark III pistol with serial number 134330) as a convicted felon on September 15, 2020, in violation of 18 U.S.C. § 922(g)(1), and (2) was dealing firearms without a license from September 15, 2020 to June 7, 2021, in violation of 18 § 922(a)(1)(A).

3. Based on the information below, I believe that Martin Campos, Jr. unlawfully possessed a firearm (specifically, a Pioneer Corporation 7.62 caliber pistol with a serial number of PAC1127572) as a convicted felon on October 6, 2020, in violation of 18 U.S.C. § 922(g)(1).

4. Based on the information below, I believe that Cody Moreno illegally transferred and possessed a machine gun (specifically, a drop-in auto sear) on March 5, 2021, in violation of 18 U.S.C. § 922(o).

5. I am a Special Agent in the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since April 2013. I am presently assigned to the ATF San Jose Field Office in San Jose, California. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia.

6. As an ATF Special Agent, I have been trained to conduct and participate in both state and federal investigations involving the illicit possession of firearms, the trafficking of firearms, and the distribution of controlled substances. I have received training in how to

investigate and assist in the prosecution of criminal street gangs engaged in illegal narcotics and firearms trafficking. I have received training and participated in various types of investigative techniques, including using electronic surveillance and undercover agents and informants. I have participated in physical surveillance operations, and have applied for and participated in the execution of federal arrest warrants. In addition to using these investigative techniques, I have been trained to analyze information resulting from traditional record searches, pen registers and trap and trace devices, financial records, utility records, and telephone toll and subscriber records.

7. Prior to my employment with the ATF, I was a non-commissioned officer in the United States Army, and I currently hold a commission in the United States Army Reserves (USAR).

8. The facts in this affidavit come from my personal observations, my training and experience, law enforcement databases, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. In addition, where statements made by other individuals are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

## FACTS ESTABLISHING PROBABLE CAUSE

9. As provided below, an ATF confidential source (CI)[1] met with Jaramillo on multiple occasions to purchase firearms and ammunition. Specifically, the CI purchased a total of eleven firearms (plus ammunition) from Jaramillo over the following dates: September 15,

---

[1] For approximately 8 years, the CI has regularly assisted ATF in investigations and has received financial compensation for this work. This includes significant monetary payments for the CI's participation in the instant investigation. The CI has a felony conviction for Robbery which predated his work with ATF. Information provided by the CI to ATF has, to date, been found to be credible based on law enforcement corroboration of information provided by the CI.

2020, October 1, 2020, October 6, 2020, October 26, 2020, March 19, 2021, March 25, 2021, and June 7, 2021. The CI bought one firearm from Campos on October 6, 2020, and three firearms (including a machinegun) from Moreno on March 5, 2021. Each meeting was audio/video recorded. Prior to and after the controlled buys described herein, ATF searched the CI for contraband, and none was found. Jaramillo and Campos were felons at the time of these sales, and thus prohibited from possessing firearms or ammunition. Further, Jaramillo, Campos, and Moreno were not licensed to sell firearms.

      10.     The CI became acquainted with Jaramillo in the summer of 2020 in Salinas, California, which is within the Northern District of California. Jaramillo told the CI that he had been to prison, that he was a member of a *Norteño* street gang, and that he had connections to methamphetamine and firearm sources in the Salinas area.

      12.     The CI and Jaramillo exchanged telephone numbers. A law enforcement database revealed that the phone number Jaramillo gave to the CI came back to Francisco Jaramillo. ATF retrieved a photo of Jaramillo from DMV records and the CI confirmed Jaramillo's identity.

      13.     On July 28, 2020, the CI called Jaramillo and told him that the CI needed a firearm. Jaramillo stated that he had a firearm, which was described to the CI as "a German gun, .22 Ruger pistol with 500 rounds of ammunition for $500."

      14.     On September 11, 2020, at approximately 1020 hours, the CI called Jaramillo. During their conversation, Jaramillo invited the CI to his residence and sent the CI his address, which was in Salinas. The CI met Jaramillo at Jaramillo's residence and took a picture of the .22 Ruger (see below), which the CI purchased a few days later (see below).



September 15, 2020: purchase of a firearm and ammunition from Jaramillo

15. On September 15, 2020, at approximately 1610 hours, the CI met Jaramillo at Jaramillo's residence in Salinas. The CI and Jaramillo had previously discussed the CI purchasing a firearm at Jaramillo's residence.

16. Inside the residence, the CI paid Jaramillo $500 for a firearm and ammunition and $100 for holding it. Jaramillo told the CI that one of his associates had access to three additional firearms.

17. The purchased handgun was determined to be a .22 caliber Ruger model Mark III pistol with serial number 134330, manufactured by Sturm, Ruger & Co., Inc. in Southport, Connecticut. The ammunition was 11 rounds of Winchester-Western .22 caliber ammunition. The ammunition was manufactured in Illinois.

October 1, 2020: purchase of a machinegun and ammunition from Jaramillo

18. On September 22, 2020, at approximately 2008 hours, Jaramillo sent a picture of a Glock style pistol with an extended magazine and a "Glock switch" (see below). A "switch" is a machine gun converting device that when affixed to a firearm, allows it to function as a fully automatic weapon. The CI expressed interest in the Glock style pistol. The CI would later purchase the Glock style pistol with the switch (more details below).



19. On September 23, 2020, the CI told Jaramillo to remind the source of the Glock style pistol about the gun deal. Jaramillo replied, "No I've already talk to her today and she said it's all good still I told her to don't sell it to nobody else and she said OK."

20. On September 25, 2020, at approximately 1352 hours, Jaramillo sent a text message to the CI stating, "Look how it blow." Jaramillo followed the text message with a video of what appeared to be an unknown individual test firing the fully automatic pistol in the dark.

21. On October 1, 2020, at approximately 1346 hours, the CI arrived at Jaramillo's residence, knocked, and entered. Jaramillo went to a room and retrieved the firearm. The CI paid Jaramillo $1,900 for the Glock style pistol and sixteen rounds of .40 caliber ammunition. CI asked Jaramillo to show him/her how to use the fully automatic pistol.

22. Jaramillo stated, "So look, it is fully automatic. All you have to do is set the switch at the back. You don't have to do nothing else to it." Jaramillo then showed the CI the test fire video, which was the same video sent to the CI on September 25, 2020.

23. The purchased firearm was sent to the ATF Firearms Ammunition Technology Division (FATD) for testing, examination, and classification. FATD determined that the purchased firearm was fitted with a machine gun conversion device and functioned as a machine gun. The firearm was a privately manufactured firearm (PMF), also known as a "ghost gun." The

ammunition was sixteen rounds of Winchester Western .40 caliber ammunition. The ammunition was manufactured in Illinois.

<u>October 6, 2020: controlled purchase of three firearms and ammunition, including two firearms from Jaramillo and one firearm from Campos</u>

24. On October 6, 2020, at approximately 1558 hours, an undercover agent (referred to hereafter as "the UC") and the CI arrived at Jaramillo's residence in Salinas to conduct another firearms transaction. The UC parked in the driveway and observed Jaramillo holding a brown paper bag as he walked towards the UC vehicle.

25. Jaramillo entered the UC vehicle, sat behind the CI in the front passenger seat, and exchanged greetings with the UC. Subsequently, Jaramillo handed the UC a gun case and stated, "That's the Taurus right there." The UC looked at the contents and asked if Jaramillo had another firearm for sale. Jaramillo told the UC that he had a Glock and then got out of the UC vehicle to retrieve it.

26. Jaramillo returned with the Glock pistol and passed it to the UC. Jaramillo stated that he wanted $2,600 for the two firearms and that he had two more handguns for $2,400. Jaramillo told the UC that some other people were on their way to sell more firearms. The UC paid Jaramillo, left the area, and then returned approximately three hours later to purchase more firearms.

27. ATF determined that the firearms purchased from Jaramillo were a 9mm privately manufactured firearm (PMF – also known as a "ghost gun") with no serial number and a 9mm Taurus semi-automatic Model TH9 pistol, with serial number ABG687469. ATF traces showed that the Taurus pistol was manufactured by Taurus International Mfg., Inc. in Brazil. The PMF was loaded with ten rounds of Winchester Western 9mm ammunition, which were manufactured in Illinois.

28. The UC and the CI returned to Jaramillo's residence later that day to purchase more firearms. During the second visit, an individual calling himself "Silent" and claiming status as a *Norteño* gang member approached the UC holding an AK pistol. "Silent" wanted to

sell the firearm to the UC. The UC told him that he only had $1600. "Silent" sold the AK pistol to the UC for $1600 along with two magazines. One magazine contained 6 bullets and the other contained 19 bullets.

29. ATF agents were able to identify "Silent" as Martin Campos. Campos gave the CI his Snapchat handle, "yung_jefe832. The CI looked up "yung_jefe832" on Snapchat and saw that the name Martin Campos was associated with the handle. ATF retrieved an Arkansas DMV photo for Martin Campos and the UC confirmed the identity of Campos as "Silent."

30. The firearm purchased from Campos was a Pioneer Corporation 7.62 caliber pistol with a serial number of PAC1127572 and it was manufactured in Poland. This firearm is capable of accepting a large capacity magazine.

<u>October 26, 2020: purchase of a firearm and ammunition from Jaramillo</u>

31. On October 14, 2020, at approximately 1813 hours, the CI received the picture below from Jaramillo via text message. Jaramillo stated that it was an original Glock pistol and that he wanted "18" [$1800] for it. Jaramillo later informed the CI that he was keeping the Glock with the 50-round drum because it was "cool." Jaramillo added that someone offered him $2,000 but would hold on to it. After days of back-and-forth, Jaramillo agreed to sell the firearm with the 50-round drum to the CI.



34. On October 26, 2020, at approximately 1308 hours, the CI arrived at Jaramillo's residence in Salinas. While there, Jaramillo went into a room, retrieved a firearm that was on the top of his dresser, and gave it to the CI. The CI paid Jaramillo $1,800 for the pistol, five rounds of 9mm Aguila ammunition, and a high-capacity magazine.

35. It was determined that the purchased handgun was a 9mm Glock semi-automatic Model 43 pistol, with serial number ABWB124, and manufactured in Austria. The high-capacity magazine was capable of accepting approximately 50 rounds of ammunition. The five rounds of 9mm ammunition were manufactured in Mexico.

March 5, 2021: firearms purchase (including a machinegun) from Cody Moreno

36. On March 3, 2021, the CI communicated with Jaramillo about buying more firearms. The CI texted Jaramillo, "who got some switches for 4 sell bro ????" Jaramillo told the CI that "my boy got them all." Jaramillo and the CI continued to communicate about firearms, which led to a meeting on March 5, 2021 at an In-and-Out Burger parking lot in Salinas.

37. The source of the above-referenced firearms for sale arrived in a burgundy Mazda, with California license plate 8SOV925. The registered owner was associated with an address in Salinas. ATF searched for the occupants of this Salinas address using a law enforcement database. Cody Moreno was one of the occupants. ATF retrieved a DMV photo of Cody Moreno and the CI confirmed Cody Moreno's identity.

38. Jaramillo and the CI got into the Mazda (Jaramillo in the front passenger and the CI in the rear). Moreno gave the CI a short-barreled rifle and a pistol. The CI paid Moreno $3,300 for the two firearms. The CI wrapped the firearms in his jacket and told Moreno that, "It is hard for me to get this shit bro because I'm a felon." The CI then asked Moreno about the "switches." Moreno told the CI that his connect ran out of Glock switches, but he had AR switches for sale.

39. The CI paid Moreno $200 for an AR switch. Moreno told the CI, "I have to put it together then you have to put it inside." Moreno then asked, "You know where to put it, the sear?" A sear is a part and/or combination of parts designed and intended for use in converting a

8

weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Moreno walked to his trunk and retrieved a drop-in auto sear (sear).

40. Moreno then showed the CI how to put the sear together. After Moreno showed the CI how to put the sear together, Moreno showed the CI how to install the sear into the rifle he sold to the CI. After Moreno informed the CI how to use the sear, the CI left the area with Jaramillo. Jaramillo dropped the CI off at his car and then the CI left and met with ATF agents. ATF obtained Moreno's Snapchat. In the Snapchat, Moreno advertised that he had AR switches and attached a video demonstrating a weapon firing at full auto.

41. The purchased pistol was determined to be a PMF. The short-barrel rifle and the sear were sent to the ATF FATD for testing, examination, and classification. FATD determined that the purchased rifle is a rifle with a barrel less than 16 inches and is a PMF. The drop-in auto sear was classified as a machine gun.

March 19, 2021: purchase of firearm and ammunition from Jaramillo

42. On March 17, 2021, at approximately 1611 hours, the CI received a video message from Jaramillo. The video appeared to be a clip of a firearm displayed on a bed. Jaramillo later informed the CI that he wanted $1,800 for the firearm and ammunition. The CI was able to negotiate the price down to $1,600.

43. On March 19, 2021, at approximately 1225 hours, the CI arrived at Jaramillo's residence in Salinas. Inside, Jaramillo gave the firearm to the CI and the CI paid Jaramillo $1,600.

44. The purchased firearm was determined to be a .223 caliber PMF with no manufacturer's marking and/or serial number. ATF traces showed that sixteen rounds of the .223 ammunition purchased with the firearm were manufactured by Federal Premium Ammunition in Anoka, Minnesota.

March 25, 2021: controlled purchase of four machineguns from Jaramillo

45. On March 20, 2021, at approximately 1407 hours, Jaramillo sent the CI a text message stating, "U want those switches." Jaramillo and the CI negotiated a price of $1000 for four switches.

46. On March 25, 2021, at approximately 1247 hours, the CI arrived at Jaramillo's residence in Salinas. Inside, Jaramillo gave the switches to the CI. The CI asked Jaramillo if the switches were for "Glock" firearms and if they worked.

47. Jaramillo informed the CI: "it is super easy, first take off the back plate and literally put it in there." Jaramillo confirmed that once the CI heard the sound of a click, the firearm would be automatic, rapid-fire. The CI then paid Jaramillo $1,000 for the four switches and $100 for arranging the transaction.

48, The purchased firearms were sent to the ATF FATD for testing, examination, and classification. FATD determined that each of the four purchased items consisted of three components which, when assembled, are considered a machine gun conversion device commonly referred to as a Glock Switch or Glock Chip. The purchased items bear no manufacturer's markings of identification or serial number and were determined to be machine guns.

June 7, 2021: purchase of a firearm from Jaramillo

49. On June 7, 2021, at approximately 1416 hours, Jaramillo told the CI to meet at the Irvington Park located in Fremont, California, which is within the Northern District of California. Jaramillo and the CI had previously discussed the purchase of a pistol. At approximately 1429 hours, the CI traveled from Salinas and arrived at the park. A few minutes later, Jaramillo pulled up next to the CI in a silver-colored Nissan, which the CI entered.

50. Jaramillo asked the CI for the money, so he could purchase the firearm from the source. Subsequently, the CI counted and gave Jaramillo $2,100 for the firearm and $100.00 for Jaramillo arranging the transaction.

51. At approximately 1430 hours, Jaramillo exited his vehicle and law enforcement surveillance observed him walk to a black SUV. A few minutes later, Jaramillo returned to his

vehicle with a blue sack. Jaramillo gave the sack to the CI and then the CI exited Jaramillo's vehicle and departed the location. A firearm was inside the sack.

52. ATF determined that the purchased firearm was a 9mm Masterpiece Arms Model MPA930 pistol, with serial number F1567, and was manufactured by Masterpiece Arms in Georgia.

53. Francisco Jaramillo is a convicted felon. Jaramillo has a felony conviction for California Penal Code Section 459 (Burglary). He was sentenced to 2 years in prison. Martin Campos is also a convicted felon. Campos has felony convictions for aggravated assault, possession of a firearm by a prohibited person, and possession of a defaced firearm. He was sentenced to 36 month suspended sentences. Cody Moreno has two felony convictions (carrying a firearm in a vehicle and possession of controlled substances for sale); however, Moreno sustained these convictions after March 5, 2021.

54. ATF Federal Firearm License database revealed that neither Jaramillo, Campos, nor Moreno have a license to deal firearms. A National Firearm Registration and Transfer Record check revealed that neither Moreno, nor Jaramillo registered any machine gun or short-barreled weapon.

## CONCLUSION

55. Based on the above, I believe Francisco Jaramillo violated 18 §§ U.S.C. 922(g)(1) (felon in possession of a firearm) and 922(a)(1)(A) (dealing in firearms without a license). I also believe that Martin Campos violated 18 § U.S.C. 922(g)(1) and that Cody Moreno violated 18 § 922(o) (illegal transfer and possession of a machine gun).

11

56. Accordingly, I respectfully request that the Court issue arrest warrants for Francisco Jaramillo, Martin Campos, and Cody Moreno.

/s/
_____
Oluwatoba O. Awolola
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this ___ day of October, 2021.

1 day of November, 2021

_____
HON. ROBERT M. ILLMAN
United States Magistrate Judge

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |||
|---|---|---|
| BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING || Name of District Court, and/or Judge/Magistrate Location: **NORTHERN DISTRICT OF CALIFORNIA** |
| **OFFENSE CHARGED** 18 U.S.C. § 922(g)(1) ☐ Petty ☐ Minor ☐ Misdemeanor ☒ Felony PENALTY: Maximum penalties: 10 years of imprisonment, $250,000 fine, 3 years of supervised release, $100 special assessment, and forfeiture || **DEFENDANT - U.S** ▶ Martin Campos, Jr. DISTRICT COURT NUMBER **CR 21-71733-MAG** |
| **PROCEEDING** Name of Complaintant Agency, or Person (& Title, if any) ATF ☐ person is awaiting trial in another Federal or State Court, give name of court ☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District ☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE ☐ this prosecution relates to a pending case involving this same defendant ☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under | SHOW DOCKET NO. MAGISTRATE CASE NO. | **DEFENDANT** **IS NOT IN CUSTODY** Has not been arrested, pending outcome this proceeding. 1) ☒ If not detained give date any prior summons was served on above charges ▶ _____ 2) ☐ Is a Fugitive 3) ☐ Is on Bail or Release from (show District) _____ **IS IN CUSTODY** 4) ☐ On this charge 5) ☐ On another conviction } ☐ Federal ☐ State 6) ☐ Awaiting trial on other charges If answer to (6) is "Yes", show name of institution _____ Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed _____ **DATE OF ARREST** ▶ Month/Day/Year _____ Or... if Arresting Agency & Warrant were not **DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____ |
| Name and Office of Person Furnishing Information on this form: Stephanie M. Hinds ☒ U.S. Attorney ☐ Other U.S. Agency Name of Assistant U.S. Attorney (if assigned): Neal C. Hong || ☐ This report amends AO 257 previously submitted |
| **ADDITIONAL INFORMATION OR COMMENTS** |||
| PROCESS: ☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT Bail Amount: _____ If Summons, complete following: ☐ Arraignment ☐ Initial Appearance Defendant Address: _____ Comments: || * Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment Date/Time: _____ Before Judge: _____ |